UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

RPM PIZZA, LLC D/B/A DOMINO'S PIZZA

VERSUS

ARGONAUT GREAT CENTRAL INSURANCE COMPANY

CIVIL ACTION

NO. 10-684-BAJ-SCR
C/W NO. 12-147

**RULING AND ORDER**

This matter is before the Court pursuant to two Motions for Partial Summary Judgment and one Motion for Final Summary Judgment. These Motions include: (1) a Motion for Partial Summary Judgment filed on behalf of Plaintiff-In-Intervention Domino's Pizza LLC ("Plaintiff Domino's Pizza") (doc. 35)[1]; (2) a Motion for Partial Summary Judgment filed on behalf of Plaintiff RPM Pizza, LLC ("Plaintiff RPM Pizza") (doc. 58)[2]; and (3) a Cross-Motion for Final Summary Judgment filed on behalf of Defendant Argonaut Great Central Insurance Company ("Defendant Argonaut") (doc. 69).[3]

---

[1] Plaintiff-In-Intervention Domino's Pizza seeks summary judgment to enforce Argonaut's duty under an insurance policy to defend its insured against the claims asserted in the putative class action captioned *Toni Spillman, Individually and on Behalf of the Class v. RPM Pizza, Inc. and Domino's Pizza, LLC*, Civil Action Number 10-349-BAJ-SCR.

[2] Plaintiff RPM seeks summary judgment on the same grounds as Plaintiff-in-intervention Domino's Pizza. Specifically, Plaintiff RPM Pizza also seeks summary judgment to enforce Argonaut's duty under an insurance policy to defend its insured against the claims asserted in the putative class action captioned *Toni Spillman, Individually and on Behalf of the Class v. RPM Pizza, Inc. and Domino's Pizza, LLC*, Civil Action Number 10-349-BAJ-SCR.

[3] Defendant Argonaut seeks final summary judgment which, among other things, declares that it has no duty to defend either RPM or Domino's in the underlying case *Toni Spillman, Individually and on Behalf of the Class v. RPM Pizza, Inc. and Domino's Pizza, LLC*, Civil Action Number 10-349-BAJ-SCR, and correspondingly would have no duty to indemnify either RPM or Domino's should they become legally obligated to pay damages in the Spillman Action.

Plaintiffs have filed oppositions to the Motion by Defendant. Defendant has also opposed Plaintiffs' Motions. Because each Motion involves subject matter that comprises a material part of the subject matter of the others, all Motions for Partial and Final Summary Judgment are handled jointly. This is a consolidated suit brought under the diversity jurisdiction of this Court pursuant to 28 U.S.C. § 1332.

## BACKGROUND

### I. UNCONTESTED FACTS

According to the undisputed facts[4]:

- Defendant Argonaut issued to Plaintiff RPM Pizza a Commercial General Liability Policy (the "Policy") for the policy period of March 21, 2010 to March 31. 2011 (doc. 35-23 ¶ 1, doc. 58-1 ¶ 1, doc. 69-2 ¶ 1).

- Plaintiff-In-Intervention Domino's Pizza, as RPM's franchisor, is named as an additional insured on the Policy (doc. 35-23 ¶ 2).

- On or about May 20, 2010, a class action lawsuit was filed in the United States District Court, Middle District of Louisiana, entitled *Toni Spillman, Individually and on Behalf of the Class v. RPM Pizza, Inc. and Domino's Pizza, LLC*, Civil Action Number 10-349-BAJ-SCR (the "Spillman Action") (doc. 35-23 ¶ 7, doc. 58-1 ¶ 6, doc. 69-2 ¶ 5).

---

and on Behalf of the Class v. RPM Pizza, Inc. and Domino's Pizza, LLC, Civil Action Number 10-349-BAJ-SCR, and correspondingly would have no duty to indemnify either RPM or Domino's should they become legally obligated to pay damages in the Spillman Action.

[4] Pursuant to Local Rule (LR) 56.1, Plaintiffs have submitted a statement of undisputed material facts with each Motion for Partial Summary Judgment. Defendant, however, has contested some of those facts, as permitted under LR 56.2. Similarly, Defendant has submitted a statement of undisputed material facts with its Motion for Partial Summary Judgment and Motion for Final Summary Judgment. Plaintiffs have contested some of these facts. Therefore, pursuant to LR 56.2, certain material facts will be deemed admitted for purposes of this motion.

2

- The complaint filed in the Spillman Action alleged that RPM or Domino's sent prerecorded messages advertising pizza specials to class members' cellular or residential phone lines, and that such conduct violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA") (doc. 35-23 ¶ 8, doc. 58-1 ¶ 7, doc. 69-2 ¶ 6).

- On June 2, 2010, RPM notified Argonaut in writing of the claims asserted against it in the Spillman Action, and demanded a defense from Argonaut under the Policy (doc. 58-1 ¶ 11).

- Although initially denying coverage on September 7, 2010, Argonaut subsequently agreed to provide a defense to RPM on June 3, 2011 under a full and continuing reservation of Argonaut's right to deny coverage. Argonaut also made a partial payment of defense costs to RPM on October 5, 2011. Argonaut, through Argo Select, made a partial payment to the attorneys for RPM on September 29, 2011 (doc. 58-1 ¶¶ 12-13).

- On June 4, 2010, Domino's notified RPM and Argonaut in writing of the claims asserted against it in the Spillman Action, and demanded a defense from Argonaut under the Policy (doc. 35-23 ¶12).

- Although initially denying coverage on September 16, 2010, Argonaut subsequently agreed to provide a defense to Domino's on August 30, 2011 under a full and continuing reservation of Argonaut's right to deny coverage (doc. 35-23 ¶¶13-19).

## ANALYSIS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether the movant is entitled to summary judgment, the court views facts in the light most favorable to

3

the non-movant and draws all reasonable inferences in her favor. *Coleman v. Houston Independent School District*, 113 F.3d 528 (5th Cir. 1997). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2411, 91 L.Ed.2d 202 (1986).

The non-movant's burden, however, is not satisfied by some metaphysical doubt as to the material facts, or by conclusory allegations, unsubstantiated assertions or a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

## I. DEFENDANT'S BREACH OF DUTY TO DEFEND, PAYMENT OF DEFENSE EXPENSES, AND BAD FAITH

The Court has carefully reviewed this matter and finds that Plaintiffs' Partial Motions for Summary Judgment must be granted in part and denied in part. Defendant's Motion for Summary Judgment must be denied.

To the extent that Plaintiffs seek a declaratory judgment that Louisiana law applies and Defendant has an ongoing duty to pay costs to RPM and Domino's in the Spillman Action, this Court grants the Motions in part.

To the extent that Plaintiffs seek a judgment as a matter of law that Defendant has breached its duty to defend, the Motions are denied. From the

4

pleadings and documentation provided by both parties, it is clear that Defendant's agreement and actions to pay defense costs, when viewed in the light most favorable to Defendant, raise a genuine issue of material fact as to whether Defendant breached its obligations to defend Plaintiffs.

Similarly, the Court is not persuaded by Plaintiffs' arguments that they are entitled to summary judgment on the issue of liability under Louisiana law. The Court declines to find judgment as a matter of law on the issue of whether Defendant's actions were arbitrary, capricious, or without probable cause. The Court reaches each of these conclusions for the following reasons.

### A. CONFLICTS OF LAW

Foremost, although Defendant avers that there is a conflicts of law question, the Court sees no reason why Louisiana law does not apply in this diversity case. When a case is removed to federal court on the basis of diversity jurisdiction, the Erie doctrine requires federal courts to apply substantive state law when adjudicating state law claims. *LeMeilleur v. Monumental Life Ins. Co.*, 419 F. App'x 451, 453 (5th Cir. 2011) (citing *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)).

Here, Defendant does not allege facts showing that the parties chose another state's law for the Policy agreement. Defendant is correct in that if the Court applied a conflict of laws analysis, Louisiana's conflict of laws rules would apply. *Interfirst Bank Clifton v. Fernandez,* 853 F.2d 292, 294 (5th Cir. 1988). However, Defendant urges the Court to engage in a conflicts of law analysis by

5

citing a case that discusses the power of states to regulate the terms and conditions of marine insurance contracts.[5] Defendant fails to demonstrate how the interpretation of choice of law rules for marine insurance contracts is pertinent in this commercial, general liability policy case. Further, Plaintiffs correctly point out that this suit involves a duty to defend a dispute brought in Louisiana.[6] Finally, Defendant does not identify how the application of another state's law would conflict with the application of Louisiana law in this case.

Thus, because Defendant has not demonstrated an actual conflict of laws issue, the Court finds that Louisiana law applies in this commercial, general liability policy case.

### B. DUTY TO DEFEND

The Court finds that neither Plaintiff RPM nor Domino's is entitled to judgment as a matter of law on the issue of whether Defendant breached its duty to defend. Under Louisiana law, a liability insurer's duty to defend and the scope of its coverage are separate and distinct issues. *Motorola, Inc. v. Associated Indemnity Corporation*, 02-0716, p. 5 (La.App. 1st Cir.6/25/04), 878 So.2d 824, 828, 836.

It is likewise well-recognized that the obligation of a liability insurer to defend suits against its insured is generally broader than its obligation to provide

---

[5] Defendant cites the *McDermott* case in which the issue was whether federal or local law applies to a marine insurance contract. *J. Ray McDermott & Co., Inc. v. Fid. & Cas. Co. of New York*, 466 F. Supp. 353, 365 (E.D. La. 1979).

[6] Plaintiffs cite *Richards' Realty Co., L.L.C. v. Paramount Disaster Recovery, Inc.* in support of their assertion. 476 F. Supp. 2d 618, 622 (E.D. La. 2007) (applying Louisiana law although the contract was entered in California, noting "Louisiana's interest in regulating the insurance industry").

6

coverage for damages claims. *Steptore v. Masco Construction Company, Inc.,* 93-2064, p. 8 (La.8/18/94), 643 So.2d 1213, 1218. Thus, even if a plaintiff's claim against an insured probably lacks merit, the insurer must defend its insured, if the claim might conceivably fall within its coverage. *N. Am. Treatment Sys., Inc. v. Scottsdale Ins. Co.,* 2005-0081 (La. App. 1 Cir. 8/23/06), 943 So. 2d 429, 443 *writ denied,* 2006-2918 (La. 2/16/07), 949 So. 2d 423 and *writ denied,* 2006-2803 (La. 2/16/07), 949 So. 2d 424.

Here, Plaintiffs contend that Defendant Argonaut is obligated to defend any suit seeking damages covered by the Policy (doc. 35-23 ¶¶ 3-10, doc. 58-1 ¶¶ 3-10). Plaintiffs further allege that the Spillman Action involves an "advertising injury" covered by the Policy (*Id*).

Defendant Argonaut avers that the allegations in the Spillman Action do not assert an "advertising injury" under the Policy (69-2 ¶¶ 1-5). According to Defendant, the prerecorded telephone calls did not disclose the Spillman plaintiff's private information as is required under the Policy definition and description (*Id*).

Plaintiffs are correct in that even if a plaintiff's claim against an insured probably lacks merit, the insurer must defend its insured, if the claim might conceivably fall within its coverage. Under these circumstances, the claim might

7

conceivably fall within coverage. Thus, Plaintiffs are correct in that Defendant owes a duty to defend and is obligated to pay certain defense costs to Plaintiffs.[7]

Consequently, the Court notes that, since the filing of the instant suit, Defendant has agreed to defend both Plaintiff RPM and Domino's and to pay certain defense costs. Although initially denying coverage on September 7, 2010, Argonaut subsequently agreed to provide a defense to RPM on June 3, 2011 under a full and continuing reservation of Argonaut's right to deny coverage. Similarly, although initially denying coverage on September 16, 2010, Argonaut subsequently agreed to provide a defense to Domino's on August 30, 2011 under a full and continuing reservation of Argonaut's right to deny coverage.

Because Defendant has already agreed to defend both Plaintiffs, the threshold issue is whether Defendant has nevertheless breached its duty to defend because: (1) it failed to immediately defend and pay costs for defense for RPM and Domino's under its Policy; (2) it agreed to defend both Plaintiffs but continues to contest coverage and reserves its right to deny coverage at anytime; and (3) it has only made partial payments to RPM and its defense counsel for its defense costs and has made no payments to Domino's. The Court finds that

---

[7] The Court finds that Domino's is entitled to a duty to defend as much as RPM. With regard to whether Domino's is an additional insured, Plaintiff asserts, and the Court agrees, that the mere fact that: (1) the franchise agreement required RPM to name Domino's as an additional insured; and (2) the Policy physically listed Domino's as an additional insured, makes it at least conceivable that it is entitled to a duty to defend. The claim against Domino's conceivably falls within the Policy's coverage in satisfaction of Louisiana law.

8

there are genuine issues of material fact as to whether Defendant has breached its duty to defend under these circumstances.

First, Louisiana law is clear in that an insurer does not automatically breach its duty to defend merely because it reserves the right to deny coverage under the policy. "An insurer that elects to reserve its rights to deny coverage may nevertheless discharge its contractual obligation to defend its insured by engaging separate counsel to represent the insured; and an insurer that does so is not obliged to reimburse the costs and legal fees incurred by an insured in contesting the coverage issues. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Circle, Inc.*, 915 F.2d 986, 991 (5th Cir. 1990) (citing *Dugas Pest Control, Inc. v. Mutual Fire, Marine & Inland Ins. Co.*, 504 So.2d 1051, 1054 (La. Ct. App.1987)). Here, the mere fact that Defendant continues to challenge its liability under the Policy and reserves its right to deny coverage does not mean it has breached its duty to defend.

Second, neither Plaintiff cites a case under Louisiana law which holds that an insurer that is slow to decide upon coverage or dispense payments after an agreement to defend was executed, has breach its duty. Many of the cases cited by Plaintiffs, for which they argue for breach and reimbursement of expenses, involve a third party demand against an insurer that has refused to defend. For example, in *Cunard*,[8] the Court of Appeals for the Third Circuit of Louisiana affirmed the state district court's decision holding that: (1) the insurer was

---

[8] *Cunard Line Ltd. Co. v. Datrex, Inc.*, 2009-656 (La. App. 3 Cir. 12/9/09), 26 So. 3d 886, 895 *writ denied*, 2010-0058 (La. 3/26/10), 29 So. 3d 1264.

9

obligated to provide defense; (2) the insurer was not entitled to retroactive relief from its duty to defend; and (3) the trial court did not abuse its discretion in finding amounts charged for defense of purchaser's claim were reasonable, and that insurer was liable for such amounts. *Id.* at 895.

Here, Defendant has already agreed to defend Plaintiffs with a reservation of rights to deny coverage. Defendant has also advanced defense related funds to one Plaintiff on two occasions. Both Plaintiffs are participating in the same action and Defendant has partially complied with its duty. If Plaintiffs seek to challenge Defendant's timeliness in providing defense costs, or inadequacy of defense, that involves a different standard. For example, the duty to defend encompasses an obligation to do so vigorously and adequately. *See Cousins v. State Farm Mut. Auto. Ins. Co.,* 294 So.2d 272, 275 (La. Ct. App.), *writ ref'd,* 296 So.2d 837 (La.1974). Plaintiffs can also conceivably argue, as they have on a separate claim, that Defendant was in bad faith by not providing defense costs in a timely manner. However, none of these arguments establish that Plaintiffs are entitled to judgment as a matter of law as to Defendant's breach of its duty to defend.

Thus, the Court finds that there are genuine issues of material fact as to whether Defendant has breached its duty to defend under these circumstances. The Court therefore must deny Plaintiffs' Motions seeking a judgment as a matter of law as to either Plaintiff on this issue.

## C. DUTY TO PAY DEFENSE FEES AND COSTS

To the extent Plaintiffs seek a declaratory judgment that Defendant has an ongoing duty to pay costs to RPM and Domino's in the Spillman Action, this Court grants Plaintiffs' Motions in part. As previously noted, under Louisiana law, Defendant has a duty to defend if the claim might conceivably fall within its coverage.

The Court declines to enter a judgment as a matter of law as to any past expenses owed to Plaintiffs. While Defendant is liable for certain defense expenses and costs of Plaintiffs, unless otherwise stipulated in the Policy contract, Plaintiffs have not shown that there is no genuine issue of material fact as to the amounts they have asserted. It is well established that "courts have read the standard duty to defend language in general liability agreements very broadly to include all costs and fees reasonably related to defending the underlying litigation." David L. Leitner, et al., Law and Prac. of Ins. Coverage Litig. § 4:19 (2012). However, "since most general liability agreements do not specifically detail what circumstances trigger the insurer's duty to defend or which costs and fees are included, many opportunities for disagreement can arise concerning the amount and type of expenses that are or are not covered." *Id.*

Here, in accordance with this general liability agreement, Defendant has agreed to pay defense costs but reserves the right to deny coverage. Additionally, Defendant has already made partial payments to one Plaintiff. To

11

the extent that Defendant has declined to provide further payment for defense costs to either Plaintiff because it disputes coverage, the Court finds for Plaintiffs.

The Court defers judgment on the amount of defense expenses and costs owed to Plaintiffs, and refers that issue to the Magistrate Judge. Defendant asserts, and the Court agrees, that any requests for defense costs must be deemed reasonable. The Court defers judgment on the amount of defense costs owed to Plaintiffs until both parties have made an adequate showing of the reasonableness of the defense costs and fees.

### D. LOUISIANA STATUTORY PENALTIES

Plaintiffs have asserted bad faith claims under La. R.S. 22:1892 and La. R.S. 22:1973. In order to award penalties to Plaintiffs under these provisions, the Court must find that Defendant was arbitrary and capricious, and failed to deal with Plaintiffs fairly or in good faith. *Durio v. Horace Mann Ins. Co.*, 2011-0084 (La. 10/25/11), 74 So. 3d 1159, 1164.

Under Louisiana law, the phrase, "arbitrary, capricious, or without probable cause," is synonymous with "vexatious." *See La. Maint. Servs., Inc. v. Certain Underwriters at Lloyd's of London*, 616 So.2d 1250, 1253 (La. 1993). It describes an insurer whose willful refusal of a claim is not based on a good faith defense, and is usually a question of fact. *Id.* Statutory penalties are inappropriate when the insurer has a reasonable basis to defend the claim and acts in good-faith reliance on that defense. *See Guillory v. Lee*, 16 So. 3d 1104,

1127 (La. 2009). In addition, "bad faith should not be inferred from an insurer's failure to pay within the statutory time limits when such reasonable doubt exists." *Id*.

Here, the Court notes that Plaintiffs' contentions are that Defendant acted in bad faith by: (1) failing to immediately defend and pay costs for defense for RPM and Domino's under its Policy; (2) agreeing to defend both Plaintiffs but continuing to contest coverage and reserving its right to deny coverage at anytime;[9] and (3) only making partial payments to RPM and its defense counsel for its defense costs and making no payments to Domino's.

The Court declines to find as a matter of law that Defendant's actions were arbitrary, capricious, or without probable cause. Defendant has shown that there are genuine issues of material fact as to whether, in disputing Plaintiffs' coverage, Defendant acted in bad faith. The Court reaches this conclusion for several reasons.

First, Defendant asserts a good faith defense for disputing coverage. As previously noted, Defendant Argonaut avers that the allegations in the Spillman Action do not assert an "advertising injury" under the Policy. It further argues that the prerecorded telephone calls did not disclose the Spillman plaintiff's private information, as is required under the Policy definition and description.

---

[9] Here, the threshold issue in this case is the application of the pertinent provisions of the Policy. Specifically, the parties concede that there was a valid, commercial general liability policy in place during the time of the filing of the Spillman suit. However, Defendant contends that the Policy does not insure for the allegations advanced in the Spillman suit. Each party's interpretation of the policy definition is plausible and there are considerable issues of material fact with regard to this definition. To the extent that the parties seek judgment as a matter of law as to the meaning of the pertinent policy provision, their Motions are denied.

13

Case 3:10-cv-00684-BAJ-SCR   Document 110   03/28/13   Page 13 of 16

Second, Defendant has a reasonable basis to defend the claim and acts in good-faith reliance on that defense. While Plaintiffs allege a particular policy term construction for the relevant provisions, Defendant offers a counter-construction. Each party relies on substantial binding and persuasive case law with respect to different types of privacy interests as they relate to "advertising injury" coverage under a policy.[10] The Court declines to find judgment as a matter of law with regard to either party's interpretation of the policy definition. In assessing Defendant's good faith reliance on its subject definition of "advertising injury," all that is required to survive a motion for summary judgment is that Defendant reasonably relied on that definition in disputing Plaintiffs' ability to receive coverage. The Court finds that, drawing all reasonable inferences in its favor, Defendant has set forth genuine issues of material fact with regard to Defendant's good faith in disputing Plaintiffs' ability to receive coverage.

### E. DEFENDANT'S CROSS-MOTION

Defendant's Motion for Final Summary Judgment is also denied for the legal and factual conclusions set forth in this ruling (doc. 69). There are genuine issues of material fact with regard to Defendant's liability under the policy. Further, as previously noted, Defendant has a duty to defend under Louisiana

---

[10] For example, Defendant submits case law in which circuit courts have concluded that an insurance policy limited coverage to certain secrecy interests. One such court held that the policy's definition of "advertising injury" read like coverage of the tort of "invasion of privacy," "where an oral or written statement reveals an embarrassing fact." *American States Ins. v. Capital Assoc. Jackson Co*, 392 F.3d 939 (7th Cir. 2004). One Plaintiff alternatively cites *Jaubert v. Crowley Post-Signal, Inc.,* holding that "the right of privacy embraces four different interests…" and one of these four interests includes "when the defendant unreasonably intrudes upon the plaintiff's physical solitude or seclusion." 375 So.2d 1386, 1388 (La. 1979).

14

law considering the claim might conceivably fall within its coverage. The Court cannot conclude as a matter of law that there is no possibility of Defendant's liability under the Policy with respect to the Spillman Action against RPM and Domino's.

Further, each party's interpretation of the policy definition is plausible; thus, considerable issues of material fact with regard to this definition must be explored. To the extent that any party seeks judgment as a matter of law as to the meaning of the pertinent policy provision, such Motions are denied. Therefore, this Motion must be denied.

### F. THE COURT'S FINDINGS

Accordingly, the Court makes the following findings:

(1) To the extent that Plaintiffs seek a declaratory judgment that Louisiana law applies and Defendant has an ongoing duty to pay defense costs to RPM and Domino's in the Spillman action, this Court grants Plaintiffs' Motions. The issue of determining the amount of past defense costs due to Plaintiffs is referred to the Magistrate Judge.

(2) To the extent that Plaintiffs seek judgment as a matter of law that Defendant has breached its duty to defend, the Motions are denied.

(3) To the extent that Plaintiffs seek judgment as a matter of law that Defendant's actions were arbitrary, capricious, or without probable

15

cause in pursuit of Louisiana statutory penalties, the Motions are denied.

(4) To the extent that any party seeks judgment as a matter of law as to the meaning of the pertinent policy provision, the Motions are denied.

(5) Defendant's Motion for Final Summary Judgment is also denied for the legal and factual conclusions set forth in this ruling.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motions for Partial Summary Judgment (docs. 35, 58) are hereby **GRANTED in part** and **DENIED in part**. Defendant's Cross-Motion for Final Summary Judgment (doc. 69) is **DENIED**. Plaintiffs' Motion for Leave to File Sur-Opposition (doc. 86) is hereby **DENIED** as moot.

Baton Rouge, Louisiana, March 28, 2013.

BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA