UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **RPM PIZZA, LLC D/B/A DOMINO'S PIZZA** | **CIVIL ACTION** |
| **VERSUS** | |
| **ARGONAUT GREAT CENTRAL INSURANCE COMPANY** | **NO.: 10-00684-BAJ-SCR** |

## RULING AND ORDER

Before the Court are cross-motions for summary judgment, filed by Plaintiff RPM Pizza, LLC d/b/a Domino's Pizza ("RPM") and Defendant Argonaut Great Central Insurance Company ("Argonaut"). These motions include **RPM Pizza, LLC's Cross-Motion for Partial Summary Judgment (Doc. 219)**[1] and **Argonaut Great Central Insurance Company's Renewed Motion for Partial Summary Judgment on Coverage for Claims Administration Costs (Doc. 203)**.[2] Both motions request the Court grant summary judgment, pursuant to Federal Rule of Civil Procedure 56, regarding Argonaut's obligation to pay claims administration costs. Oral argument is not necessary. Jurisdiction is proper pursuant to 28 U.S.C. § 1332.

---

[1] Argonaut opposes the motion. (Doc. 236.)

[2] RPM opposes the motion. (Doc. 218.)

**I.     Background**

According to the undisputed facts[3]:

- Argonaut issued to RPM Pizza, LLC Commercial General Liability Policy No. RS9128440-0 ("the Policy"), for the policy period March 31, 2010 to March 31, 2011.

- The "supplementary payments" section of the Policy states:

    **SUPPLEMENTARY PAYMENTS – COVERAGES A AND B** in the CGL Form provides in pertinent part:

    We will pay, with respect to any claim we investigate or settle, or any 'suit' against an insured we defend:

    1. All expenses we incur;

    * * *

    5. All costs taxed against the insured in the 'suit.'

    6. Pre-judgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any pre-judgment interest based on that period of time after the offer.

- On or about May 20, 2010, a class action lawsuit was filed in the United States District Court, Middle District of Louisiana, entitled *Toni Spillman, Individually and on Behalf of the Class v. RPM Pizza, Inc. and Domino's Pizza, LLC*, Civil Action No. 10-000349-BAJ-SCR.

- On or about November 5, 2012, the parties, including the *Spillman* class, Argonaut, and RPM, entered into a Settlement Agreement.

---

[3] Pursuant to Local Rule 56.1, RPM submitted a statement of undisputed material facts with its cross motion for partial summary judgment. (Doc. 219-2.) Argonaut filed a response. (Doc. 338.) Argonaut also attached its own statement of undisputed material facts to its cross motion for summary judgment. (Doc. 203-2.) RPM responded in its memorandum in opposition. (Doc. 218-2.) Pursuant to Local Rule 56.2, certain material facts are deemed admitted for purposes of this ruling and order.

- The Settlement Agreement states:

  RPM shall be responsible for payment of the claims administration costs, including all costs of notice and the cost of the Notice Expert. These costs shall be paid from the Common Fund, but RPM alone is responsible for these expenses . . .

- As defined in the Settlement Agreement, "Claims Administration Costs" means those actual costs incurred to administer claims, and particularly includes the actual cost of compiling the class member list, obtaining information for dissemination of notice to the class members, the cost of retaining a person or firm to prepare a recommended notice plan, the dissemination or publication of notice, processing claims, and issuing settlement benefits to Participating Class Members.

- Accordingly, RPM paid claims administration costs in the amount of $519,260.63: $329,744.34 to Shannon Wheatman and Kinsella Media to serve as the "Notice Expert" and $189,516.29 to Rust Consulting to administer the plaintiff class's claims.

- Also included in the Settlement Agreement is RPM's reservation of rights:

  Notwithstanding any other provision of this Agreement, RPM, [Domino's Pizza], and Argonaut reserve any and all claims and rights under the Policy and any applicable law, including but not limited to claims for defense, indemnity, legal interest, [and] Claims Administration Costs . . . .

- Subject to RPM's reservation of rights, the Settlement Agreement provides that the claims administration costs are part of the Common Fund, which is the settlement principal amount. (Doc. 95-2, pp. 84-85.) The Settlement Agreement further states that in "no event shall Argonaut's financial obligation with respect to the Common Fund exceed Three Million Dollars ($3,000,000), subject to RPM's reservation of rights in Paragraph 10.2 hereof."

- The Settlement Agreement makes no reference to "defense expenses" or prejudgment interest. (Doc. 92-2, pp. 69-111.)

- The district court adopted and incorporated the parties' Settlement Agreement into its judgment and order. Civil Action No. 10-000349-BAJ-SCR, Doc. 243.

- RPM alleges in its Third Amended Complaint that it has paid "Claims Administration Costs" in the *Spillman* action. RPM describes claims

3

administration costs as items "paid to anyone appointed by the Court in *Spillman* to assist in the notice and administration of the claims process." RPM argues that Argonaut is obligated to pay the "Claims Administration Costs" pursuant to, *inter alia*, the Supplementary Payments provision in the Policy.

- On or about December 20, 2011, three of RPM's attorneys (Taylor Carroll, Dennis Blunt, and Eugene Groves), two representatives of RPM (Glenn Mueller, Sr. and Glenn Mueller, Jr.), and one senior representative of Argonaut (Byron LeFlore) collectively participated in a conversation at the offices of the Phelps Dunbar law firm in Baton Rouge, Louisiana.

- The general subject of the meeting was various issues relating to the *Spillman* class action litigation. One of the items specifically discussed at this meeting was the payment of claims administration costs.

- According to Blunt, on or about May 16, 2012, Blunt had a conversation with Wade Vandiver, a representative of Argonaut, who represented that Argonaut would not let $300,000 and $500,000 in administrative costs prevent a settlement with the *Spillman* class.

- Argonaut has received a reimbursement from the Common Fund in the amount of $486,205.

## II. Standard of Review

Pursuant to the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether the movant is entitled to summary judgment, the court views facts in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. *Coleman v. Houston Independent School District*, 113 F.3d 528, 533 (5th Cir. 1997).

After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 250 (1986).  If the moving party carries its burden of proof under Rule 56, the opposing party must direct the court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.  *Id.*  The court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.  *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992).  However, if the evidence in the record is such that a reasonable jury, drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor, the court must deny the motion for summary judgment.  *International Shortstop, Inc.*, 939 F.2d at 1263.

On the other hand, the non-movant's burden is not satisfied by some metaphysical doubt as to the material facts, or by conclusory allegations, unsubstantiated assertions, or a scintilla of evidence.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  In other words, summary judgment will lie only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Sherman v. Hallbauer*, 455 F.2d 1236, 1241 (5th Cir. 1972).

### III. Analysis

#### A. Prior Rulings on Argonaut's Alleged Obligation to Pay Claims Administration Costs

As a preliminary issue, the Court notes that it has already ruled on the issue of Argonaut's obligation to pay claims administration costs. (Doc. 133.) In considering the parties' previous motions for partial summary judgment, the Court analyzed and ruled on four of the seven issues raised by RPM in its current motion for partial summary judgment.[4] Accordingly, the Court will not revisit those issues and that it has previously analyzed and ruled on.

#### B. New Issues Raised in the Parties' Cross-Motions for Partial Summary Judgement

In support of its motion, RPM argues that Argonaut has a contractual duty to pay the claims administration costs as a cost "taxed" against RPM. In support of its argument, RPM points to the Supplementary Payments provision of its Policy, which states that Argonaut "will pay, with respect to any claim or 'suit' we defend . . .[a]ll costs taxed against the insured in the 'suit.'" (Doc. 219-4, p. 17.) RPM also points to the Court's Final Judgment in the *Spillman* matter, in which the Court incorporated the parties' Settlement Agreement into the Final Judgment. (Civil Action No. 10-000349-BAJ-SCR, Doc. 243.) According to RPM, the claims administration costs are

---

[4] Specifically, the Court analyzed and ruled on RPM's argument that: (1) Argonaut is required to pay the claims administration costs under Louisiana law (Docs. 95-3, p. 7; 133, pp. 8-9); (2) Argonaut has a contractual to pay the claims administration costs under the terms of the Policy (Docs. 95-3, p. 5; 133, pp. 8-9); (3) Argonaut is obligated to pay the claims administration costs under the terms of the Policy "as an expense incurred" by RPM (Docs. 95-3, p. 8; 133, pp. 8-9); and (4) even if the claims administration costs are treated as damages, Argonaut has a contractual duty to pay the damages within the Policy limits (Docs. 95-3, p. 6; 133, pp. 8-9).

6

a "cost" that was "taxed" against RPM when the Court incorporated the parties' Settlement Agreement into the Final Judgment. RPM also contends that expenses incurred by it in retaining the notice expert and claims administrator are "compensation of court appointed experts" costs under 28 U.S.C. § 1920.[5]

In opposition, Argonaut argues that the Final Judgment did not access or determine the amount of claims administration costs. Rather, the Final Judgment merely approved the terms of the *Spillman* Settlement Agreement, under which RPM voluntarily agreed to pay the claims administration costs under its claimed reservation of rights. Argonaut contends that because the Final Judgment did not expressly mention the claims administration costs, indicate that the claims administration costs were taxable, or enter an award of costs, the claims administration costs were not "costs" taxed against the insured in the "suit" under the plain meaning of the term "to tax." Finally, Argonaut argues that the expenses incurred by RPM in retaining the notice expert and claims administrator are not "compensation of court appointed experts" costs under 28 U.S.C. § 1920.

RPM has failed to cite to any statute, binding case law, provision of the Final

---

[5] 28 U.S.C. § 1920 states:

A judge or clerk of any court of the United States may tax as costs the following: (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title [28 USCS § 1923]; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title. A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

Judgment, or provision of the Settlement Agreement to support its argument that claims administration costs were "costs" associated with the defense of the *Spillman* litigation that were "taxed" against it by the Court.  Further, RPM has failed to cite to any statute, binding case law, provision of the Final Judgment, or provision of the Settlement Agreement to support its argument that a notice expert or claims administrator is an "expert," as contemplated by 28 U.S.C. § 1920(6).  Contrary to RPM's assertions, notice experts and claims administrators are not the equivalent of a guardian *ad litem* or Special Master.  Further, neither the notice expert nor the claims administrator were appointed by the Court under Federal Rule of Evidence 706.  Thus, RPM's argument that the $519,260.63 paid by it to the notice expert and claims administrator are "compensation of court appointed experts" costs is unavailing.

The parties' Settlement Agreement defines "Claims Administration Costs" as "those actual costs incurred to administer claims, and particularly includes the actual cost of compiling the class member list, obtaining information for dissemination of notice to the class members, the cost of retaining a person or firm to prepare a recommended notice plan, the dissemination or publication of notice, processing claims, and issuing settlement benefits to Participating Class Members."  (Doc. 219-3, p. 3.)  Based on the parties' definition, claims administration costs are not the type of costs taxed by Courts.  *See* 28 U.S.C. § 1920.

The Settlement Agreement further states that "RPM shall be responsible for payment of the claims administration costs, including all costs of notice and the cost of the Notice Expert.  These costs shall be paid from the Common Fund, but RPM alone

is responsible for these expenses. Any Claims Administration Costs actually incurred shall be paid by RPM even if the Court does not enter a Final Judgment and Order of Dismissal. . . ." (Doc. 219-3, p. 20.) Indeed, RPM does not contest that it voluntarily agreed to pay the claims administration costs "even if the Court does not enter a Final Judgment." Thus, even if the Court were to accept the argument that when it entered the Final Judgment in the *Spillman* matter, it incorporated the parties' Settlement Agreement into the Final Judgment, under the legal meaning of the terms "costs" and "taxed" and the clear terms of the parties' Settlement Agreement, it does not follow that the claims administration costs are a "cost" that was "taxed" against RPM by the Court.

In sum, the Court concludes that RPM has failed to point to sufficient evidence to support its argument that Argonaut has a contractual duty to pay the claims administration costs as a "cost" that was "taxed" against RPM by the Court. Accordingly, RPM's request for summary judgment on this basis is **DENIED**.

In the alternative, RPM argues that the Court may award nontaxable costs when authorized by the parties' settlement agreement to do so in a certified class action. In support of its argument, RPM points to Federal Rule of Civil Procedure 23 which states:

> (h) Attorney's Fees and Nontaxable Costs. In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement. The following procedures apply:
>
> (1) A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at

> a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.
>
> (2) A class member, or a party from whom payment is sought, may object to the motion.
>
> (3) The court may hold a hearing and must find the facts and state its legal conclusions under Rule 52(a).
>
> (4) The court may refer issues related to the amount of the award to a special master or a magistrate judge, as provided in Rule 54(d)(2)(D).

Fed.R.Civ.P. 23(h).

In opposition, Argonaut argues that Rule 23(h) merely provides that in a certified class action, a court may award non-taxable costs that are "authorized by law or by the parties' agreement." According to Argonaut, such non-taxable costs do not implicate 28 U.S.C. § 1920 or paragraph 5 of the "**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**" provision of the Policy.

A review of the record in this matter and the *Spillman* matter indicate that a motion for class certification was never filed nor granted by the Court in the *Spillman* matter. Further, RPM has failed to point to any evidence in the record to establish that there was a simultaneous proposal for class certification and settlement in the *Spillman* matter. Additionally, RPM has failed to point to any evidence in the record to establish that the parties followed the procedures set out in Rule 23(h). In sum, the Court finds that Rule 23(h) does not apply here. Accordingly, RPM's request for summary judgment on this basis is **DENIED**.

In the alternative, RPM argues that there is no genuine issue of material fact

that Argonaut promised to pay the claims administration costs. In support of its argument, RPM points to the signed declarations of Glenn Mueller, Sr. and Glenn Mueller, Jr., who both assert that Byron LeFlore, a representative of Argonaut, promised to pay the administrative costs associated with settling the *Spillman* lawsuit in a December 20, 2011 settlement meeting. RPM further points to correspondence from Dennis Blunt of the law firm of Phelps Dunbar to Argonaut representatives allegedly reducing the parties' agreement to writing.

In opposition, Argonaut argues that Blunt's letter does not constitute a written agreement between the parties. According to Argonaut, there was never a meeting of the minds between the parties on this matter; nor did the parties sign a written agreement. Argonaut further contends that the December 20, 2011 meeting was not a settlement, but rather, was a meeting to develop a settlement proposal to offer to the plaintiff in *Spillman*. According to Argonaut, any evidence shared during settlement negotiations is confidential, and any attempt to contradict the terms of the parties' Settlement Agreement or Policy with extrinsic evidence violates the parol evidence rule. In support of its argument, Argonaut points to Louisiana contract law, Mueller, Sr.'s deposition, Mueller, Jr.'s deposition, LeFlore's deposition, and correspondence between attorneys at Phelps Dunbar and Argonaut representatives.

Here, RPM does not argue that the parties entered into a written agreement regarding Argonaut's alleged promise to pay the claims administration costs. Indeed, RPM has failed to point to any evidence of a written agreement between the parties. Rather, RPM essentially argues that the parties had a verbal agreement that Argonaut

11

would pay the claims administration costs as evidenced by Blunt's letter. However, Blunt's deposition testimony indicates that Argonaut never agreed to his summary of the parties' alleged oral agreement:

Q: You were discussing the proposals?

A: Settlement proposals to be made to the plaintiff in *Spillman*.

Q: Subsequent to that meeting, you had some discussions with Mr. Vandiver about Argonaut's position on whether Argonaut would provide coverage for or fund the class administration costs in an ultimate settlement, did you not?

A: I think I did.

Q: Did you recall what Argonaut's position was?

A: I don't want to misspeak. It seems as though when I put together the settlement letter that outlined what we had talked about in the meeting, Argonaut's position changed. And there were comments to a proposal that were not in accordance with that we had talked about in the meeting.

Q: Mr. LeFlore's words were, we won't let the payment of the class administration cost kill the settlement, is that what he said?

A: Something to that effect.

Q: Something to that effect. In other words, he didn't say listen, I agree, my policy provides coverage for it, he didn't say that, did he?

A: No.

Q: Was there ever any writing and it was this, I won't let the administrative costs the settlements? Was that ever reduced to writing? Did anybody ever sign off on anything after that meeting, RPM and Mr. LeFlore?

A: RPM redacted, changed the settlement proposal - actually, not RPM - did I say RPM?

12

> . . .
>
> I apologize. I think Argonaut, Mr. Vandiver in particular changed my draft letter that was a proposal to come out that meeting. And if I saw the document, I could tell you what he changed. But I - there were several things that he changed. And I think the administrative costs was one. . . .

(Doc. 236-1, p. 35.)

Under Louisiana law, no contract can arise where both parties thereto have not agreed to its terms. *Colgin v. Security Storage & Van Co.*, 208 La. 173, 23 So.2d 36 (1945). LeFlore's deposition testimony, along with the other evidence submitted by Argonaut, supports the conclusion that there was no meeting of the minds. In other words, RPM has failed to point to sufficient evidence to show that the parties entered into or intended that there should be a binding contract. Mueller, Sr.'s deposition testimony supports this conclusion:

> Q: . . . Are you aware of any writing signed by RPM [and] Argonaut where there was an agreement about the handling of the administrative expenses in the context of the settlement of the *Spillman* case, other than the actual settlement agreement?
>
> A: So you're saying: Are there any documents outside of the settlement agreement?
>
> Q: I am, yes.
>
> A: That talk about the administrative fees?
>
> Q: That are signed by RPM and Argonaut.
>
> A: This affidavit.
>
> Q: Well, this is signed by you. I'm talking about an agreement reduced to writing and signed by Argonaut and RPM.

13

> A: A specific agreement where we both agree on how the settlement costs work?
>
> Q: Right.
>
> A: No.

(Doc. 236-2, p. 54.)

Further, Mueller, Sr.'s and Mueller, Jr.'s self-serving declarations are insufficient to establish a binding agreement between the parties. It is beyond dispute that self-serving affidavits, without more, cannot defeat a properly supported motion for summary judgment. *See DIRECTV, Inc. v. Budden*, 420 F.3d 521, 531 (5th Cir.2005); *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir.2001). In sum, the Court concludes that RPM has failed to point to sufficient evidence to establish that Argonaut promised to pay the claims administration costs. Accordingly, RPM's request for summary judgment on this basis is **DENIED**.

In support of its motion, Argonaut argues that there are no genuine issues of material fact that the Policy does not require it to pay the claims administration costs. In support of its motion, Argonaut cites to a case decided by the Appeals Court of Massachusetts, in which the Court held that the supplementary payments provision of an insurance policy did not cover the claims administration costs awarded in a class action. *See Titeflex Corp. V. Liberty Mutual fire Insur. Co.*, 990 N.E.2d 1072 (Mass. Ct. App. July 29, 2013).

As noted above, the Court previously ruled that there are genuine issues of material fact as to whether the claims administration costs are an "expense" or "cost"

14

that is covered by the "**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**" provision of the Policy. (Doc. 133, p. 9.) Beyond citing to a non-binding state court decision, Argonaut has failed to present any new evidence or issues of material fact. Further, in *Titeflex Corp.*, the trial court had conducted a full trial on the merits. Thus, there were no issues of material fact remaining. In sum, the Court declines to enter summary judgment as a matter of law regarding Argonaut's obligation to pay claims administration costs. Accordingly, Argonaut's cross-motion for summary judgment is **DENIED**.

### C. Counsel for Argonaut's Request that the Court Analyze, for the First Time, Legal Issues or Revisit Previously Ruled-On Legal Issues

During the parties' final pretrial conference on February 4, 2013, counsel for Argonaut requested that the Court analyze, for the first time, or re-analyze the following "pure legal issues":

(1) Whether or not, as a matter of law, the Policy covered the type of advertising injury at issue in *Spillman*?

(2) Whether or not, as a matter of law, the Policy covered the claims administration costs?

(3) Whether RPM, or any company, can collect a penalty under federal or state statute for monies allegedly untimely paid to a third party?

(4) Is Argonaut liable under Louisiana law for reserving its rights?

First the Court notes that it has already considered and ruled on issue number 2. *See* Doc. 133. A review of the record indicates that neither party sough reconsideration of the ruling, nor filed an interlocutory appeal with the United States

15

Court of Appeals for the Fifth Circuit. Further, issue number 2 is the subject of the instant cross-motions for summary judgment.

As it relates to issue number 4, counsel for Argonaut conceded on the record that the Court has already ruled that there are genuine issues of material fact as to whether Argonaut is liable under Louisiana law. *See* Doc. 110. A review of the record indicates that RPM sought reconsideration of that ruling (Doc. 112), but when RPM's motion for reconsideration was denied (Doc. 126), neither party sought an interlocutory appeal with the Fifth Circuit. The Court further notes that with the exception of the instant cross-motions for summary judgment, the parties failed to renew any previously filed motions setting forth any new evidence or issues for the Court's consideration.

As it relates to issues numbers 1 and 3, a review of the record indicates that, to this date, neither party has attempted to raise either issue via motion. The Court is not amenable to entertaining such oral requests one week before trial, and at the conclusion of a final pretrial conference. The parties' failure to file dispositive motions regarding these issues is just that - the parties' failure. Accordingly, Argonaut's request that the Court consider, for the first time, legal issues that have not been raised by the parties via a dispositive motion *or* that the Court *sua sponte* revisit issues that it has previously analyzed and ruled on is **DENIED**.

## IV. Conclusion

For the foregoing reasons,

**IT IS ORDERED** that **RPM Pizza, LLC's Cross-Motion for Partial Summary Judgment (Doc. 219) is DENIED**.

**IT IS FURTHER ORDERED** that **Argonaut Great Central Insurance Company's Renewed Motion for Partial Summary Judgment on Coverage for Claims Administration Costs (Doc. 203) is DENIED**.

Baton Rouge, Louisiana, this 6th day of February, 2014.

_____
**BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**